CALIFORNIA PACKING COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION and another, Appellants.

*April 8—May 3, 1955.*

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondents there was a brief by *Toebaas, Hart, Kraege & Jackman* of Madison, and oral argument by *W. L. Jackman.*

FAIRCHILD, C. J.   The facts of the case are undisputed. Respondents do not challenge that finding of fact of the examiner, confirmed by the Industrial Commission, that:

"As a result of the injury the applicant has sustained a permanent disability of 64 per cent as compared with loss of the left leg at the hip."

The only competent evidence in the record as to the amount of permanent partial disability is that contained in the verified report of Dr. James E. Miller, which states that:

"Disability should be figured at one-and-one-half inches shortening, which is 14 per cent, plus loss of motion and nonunion, which it is felt should put the total disability in the vicinity of fifty per cent."

In arriving at the figure of 64 per cent permanent partial disability, the Industrial Commission relied on a certain letter by Dr. H. L. Greene to respondent Liberty Mutual Insurance Company, insurer of respondent, the California Packing Company, which letter was submitted by respondents to the Industrial Commission upon the request of the commission. Dr. Greene fixed permanent partial disability at 64 per cent. His report was, however, unverified and therefore did not constitute competent evidence and was never recognized as such by respondent Packing Company, which, on the contrary, repeatedly refused to admit the letter as evidence.

As a result of certain communications between the Industrial Commission and respondents, respondents agreed not to appeal, with the understanding that the order for permanent partial disability would be on the basis of 64 per cent. In this matter the respondents are supported by the statement of the examiner in his order and findings that: "No claim is made for temporary partial disability. . . . The present issue is the degree of permanent disability." However, when the commission reserved jurisdiction to make further awards, respondents were justified in seeking a review of that part of the order reserving jurisdiction based on the finding that:

"It is uncertain whether the applicant may sustain renewed temporary disability or further permanent disability or

whether she may require further treatment as a result of the injury. Jurisdiction is therefore also reserved to award further benefits in the event of further disability or need for further treatment."

We agree with respondents' contention that there is no credible evidence to warrant or support the above finding, and that the commission acted in excess of its power in reserving jurisdiction. The verified report of Dr. Miller, the only evidence in the record which can be considered as evidence, states that the choices of treatment are two: (1) Further surgical intervention; (2) accepting disability as it is. By rejecting further surgery, applicant has accepted the disability as it is. Even if a fugitive letter containing Dr. Greene's opinion were acceptable as evidence, the conclusion which is to be drawn from it is similar to that drawn from Dr. Miller's report. Dr. Greene's opinion states that:

"I feel that she will be confined to two crutches as long as she lives unless some type of operative procedure is performed. . . . It is my opinion that there will be no improvement in this case unless surgery is performed and then I do not believe that she will be returned to any kind of employment."

No evidence has been produced from which it can be concluded that applicant's condition will improve without surgery, or that there will be a retrogression. On the contrary, proof has been produced showing that it might improve with surgery. This the applicant has rejected. The condition complained of is therefore static.

As the learned trial judge pointed out in his opinion: "Before the commission could fix the extent of partial permanent disability of the left leg the healing period must be over. The healing period has been defined in the case of *Knobbe v. Industrial Comm.* 208 Wis. 185, on pages 189 and 190. The evidence in this case sustains the fact that the healing period was over, within the definition of the *Knobbe*

*Case.* Dr. Wirig, the attending physician of the applicant, fixed that date to be April 24, 1950. . . . Applicant herself corroborated the fact that her condition has been the same for the past two years. Drs. James E. Miller and H. L. Greene, orthopedic physicians who examined her for the purpose of evaluating her disability, concluded that her condition was static, and no improvement could be expected unless further surgery would be performed. . . . Further surgery was refused by the applicant."

The inference of the Industrial Commission that there is a likelihood of future complications "is not sustainable on the basis of common or general knowledge, and is contrary not only to all the medical opinion in the case, but to all of the medical findings based on actual physical examination of the applicant. To admit the commission's claim in this respect would be to sustain an award on the basis of evidence that is not in the record, and to put beyond the reach of a judicial review a large number of cases in which by any ordinary process of reasoning there is no evidence to sustain the commission, but in which the commission asserts that because of some undisclosed knowledge on its part, or its experience and skill in drawing inferences, the fact has been established. It is our conclusion that such a view cannot be sustained." *F. A. McDonald Co. v. Industrial Comm.* 250 Wis. 134, 138, 26 N. W. (2d) 165. See also *Miller Rasmussen Ice & Coal Co. v. Industrial Comm.* 263 Wis. 538, 57 N. W. (2d) 736.

It is in the interest of public welfare that determinations made by the commission, even though administrative in character, should be just, definite, certain, and should bring the controversy to an end. *Welhouse v. Industrial Comm.* 214 Wis. 163, 252 N. W. 717. In the words of the trial court, "The healing period was over . . . it was the duty of the commission to fix the extent of permanent partial disability. . . . In fact, it was the only controverted issue, and

the commission made a finding and order thereon. It became a final order, and the commission would have no further jurisdiction over it unless within twenty days it set aside the findings and order on its own motion because of the discovery of a mistake or upon the grounds of newly discovered evidence. . . . It could not treat such an order as an interlocutory one, not for the same disability, and reserve jurisdiction to make any further award."

It is our opinion that there is no credible evidence to sustain the finding that it is uncertain whether the applicant may sustain renewed temporary disability or further permanent disability or whether she may require further treatment as a result of the injury; that the order based on the finding of 64 per cent permanent disability was a final order; and that the commission may not reserve jurisdiction to award further benefits.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting*). In this workmen's compensation proceeding the injured applicant, Cora Colstad, was not represented by counsel. When this occurs, both the commission and the reviewing courts should be zealous to see that the applicant's rights are properly protected.

Sec. 102.18 (1), Stats., provides that "Pending the final determination of any controversy before it, the commission may after any hearing make interlocutory findings, orders, and awards which may be enforced in the same manner as final awards."

The findings-of-fact portion of the award entered by the examiner in behalf of the Industrial Commission provided as follows:

"It is uncertain whether the applicant may sustain renewed temporary disability or further permanent disability or whether she may require further treatment as a result of the injury. Jurisdiction is therefore also reserved to award

further benefits in the event of further disability or need for further treatment."

The order portion of such award also contained the following statement: "Jurisdiction is reserved in certain respects as above stated."

The employer and Liberty Mutual Insurance Company, its insurance carrier, moved for review before the commission, and the commission, upon such review, entered an order which affirmed both the findings and order of the examiner's award. Clearly the findings and order of the commission were interlocutory in character. The attorney general contends in his brief that the portion of sec. 102.18 (1), Stats., above quoted, gives the commission the power to enter such an interlocutory order in any workmen's compensation case, while it was the position of the learned trial judge, as expressed in his memorandum decision, that before the commission can exercise the authority conferred upon it by statute to enter an interlocutory award there must be evidence in the record which would warrant the commission in taking such action, and that the commission cannot rely on its own knowledge from experience in determining in which instances it will enter interlocutory awards. On this point the position taken by the trial court is the correct one for reasons stated in the majority opinion, and for the further reason that knowledge of the commission not based upon evidence in the record could never be the subject of court review.

Pursuant to the request of the commission the insurance carrier, Liberty Mutual Insurance Company, filed with the commission before the hearing the written report of Dr. H. L. Greene of the result of his examination of applicant which was in the form of a letter addressed to such insurance company dated August 24, 1951, and was based on his examination of Mrs. Colstad made August 21, 1951. At the hearing, the examiner considered such medical report as

constituting part of the evidence in the case, and did so over the express objection of counsel for the employer and insurance carrier. In addition to computing the applicant's permanent partial disability as being 64 per cent of loss of the leg at the hip, the letter contained this significant statement:

"It is my opinion that this woman sustained a fracture of the neck of the femur which at the present time is in a definite state of nonunion. There is also a Smith-Peterson nail inserted through the head which has penetrated into the acetabulum. I do not believe that this woman can walk on this leg. I feel that she will be confined to two crutches as long as she lives unless some type of operative procedure is performed. Even with this she would have to walk with the aid of some support. It would be my opinion that she has *at least* 50 per cent permanent partial disability and in addition to this she has one-and-a-half-inch shortening which gives her 64 per cent permanent partial disability of the hip as compared to amputation. *It is my opinion that there will be no improvement in this case unless surgery is performed and then I do not believe that she will be returned to any kind of employment.*" (Italics supplied.)

Certainly the above-italicized last sentence of Dr. Greene's report is open to the interpretation that because of the injury to the leg Mrs. Colstad will never be able to work again. If the permanent partial disability is to be measured on the basis of the percentage of loss of leg at the hip, the governing statute is sec. 102.52 (10), which provides 500 weeks as a schedule disability for loss of leg at the hip joint, subject to the adjustment to be made for age in case the employee is above fifty years of age at the time of injury. On the other hand, if the injury, even though to the leg, is of such nature as to disable the employee from being employed in any capacity, then the governing statute is sec. 102.44 (3) (a) and (b), which imposes a maximum liability for permanent partial disability of 1,000 weeks for persons fifty years of age subject to be adjusted downward at the rate of two and one-half

per cent per year for each additional year of age beginning at fifty-one, subject to a maximum reduction of 50 per cent.

2 Larson, Law of Workmen's Compensation, p. 44, sec. 58.20, states:

"The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive. A common example of this kind of decision is that in which an amputation of a leg causes pain shooting into the rest of the body, general debility, stiffening of the hip socket, or other extended effects resulting in greater interference with ability to work than would be expected from a simple and uncomplicated loss of the leg."

The foregoing quotation is particularly applicable to the statements appearing in Dr. Greene's report which indicated that as a result of the nonunion of the fracture at the neck of the femur, and the working of the Smith-Peterson nail out of position in the hip socket, Mrs. Colstad was totally disabled, and that such condition would never improve without surgery. Therefore, on the basis of such statements in the report, the applicant was entitled to greater permanent partial disability than would be obtained by using the schedule weeks of disability for loss of a leg at the hip as a basis for computing the same.

Assuming that counsel for the employer and its insurance carrier are correct in their contention that Dr. Greene's written report was not admissible in evidence, leaving no evidence to sustain the making of an interlocutory award, then this court should set aside the award and findings and remand for further proceedings by the authority vested in the reviewing court by sec. 102.24 (1), Stats. This is because it was the duty of the commission, acting through the examiner, to protect the rights of the applicant who was not represented by counsel to see that available evidence necessary for applicant's case was put into the record in admissible form. Here the

examiner of the commission had information in the form of Dr. Greene's report which indicated that applicant was then totally disabled from working because of the failure of the fracture to knit and the slipping out of place of the Smith-Peterson nail with resulting injury to the hip socket, and that she probably would never improve without surgery. If the report were true, then either applicant was entitled to more than permanent partial disability based upon 64 per cent of loss of leg at the hip only, or to have an interlocutory award entered in the event the permanent partial disability to be presently awarded be limited to 64 per cent of loss of leg at the hip. Upon objection being made by counsel to the receipt of Dr. Greene's report in evidence, it was the duty of the examiner to either adjourn the hearing and have Dr. Greene subpoenaed to appear at a further hearing, or to obtain his verified medical report in a form admissible in evidence, pursuant to sec. 102.17 (1) (as).

It is customary for the commission to inform applicants that they do not necessarily need counsel to represent them in workmen compensation cases, thus leading applicants to believe that the commission will fully protect their rights. Where the commission, acting through its examiner, receives evidence of vital importance to applicant's claim in a form which a reviewing court later rules is inadmissible, the applicant should not be prejudiced thereby. The only way that applicant's rights can be properly protected in such a situation is for the reviewing court to set aside the award based upon the inadmissible evidence and remand for further proceedings.

For these reasons the judgment should be reversed, and cause remanded to the trial court with directions to set aside the entire award and remand for further proceedings.

I am authorized to state that Mr. Justice MARTIN and Mr. Justice STEINLE concur in this dissent.