MAYNARD ELECTRIC STEEL CASTING COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and others, Respondents.

*April 3—May 1, 1956.*

For the appellants there was a brief by *Bendinger, Hayes & Kluwin* of Milwaukee, and oral argument by *John A. Kluwin*.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan*.

For the respondent Walter Gliniecki there was a brief and oral argument by *Arnold C. Otto* of Milwaukee.

For the respondent American Mutual Liability Insurance Company there was a brief by *Wood, Warner, Tyrrell & Bruce* of Milwaukee, and oral argument by *Jackson M. Bruce*.

CURRIE, J. The plaintiffs Maynard Steel and its insurance carrier advance the following two contentions on this appeal:

(1) That the evidence does not sustain the findings of the commission, that the applicant Gliniecki "sustained an injury while in the employ of Maynard Steel Company and that his work there exposed him to the inhalation of silica dust, and that his employment as a chipper and grinder at Allis Blast Company from May 28, 1951, to June 13, 1952, did not expose him to sufficient quantities of dust to have any material effect on the development of his silicosis, and that the applicant has a 25 per cent permanent partial disability as of November 2, 1951, the last day of employment for Maynard Steel Company."

(2) That the commission does not possess the power to make a finding of permanent partial disability of 25 per cent, and at the same time reserve jurisdiction to make a possible further award in the future.

A careful review of the entire record convinces us that there is ample credible evidence to sustain the findings of fact now questioned by the plaintiffs. The facts hereinafter set forth appear from the testimony and exhibits received in evidence at the hearings had before the two examiners.

Gliniecki was born October 17, 1901. He had worked in various dusty occupations including that of chipper and grinder in foundries prior to becoming employed by Maynard Steel on June 23, 1947. His periods of employment by Maynard Steel following that date were as follows:

> June 23, 1947, to March 19, 1948;
> December 20, 1948, to January 20, 1950;
> April 20, 1950, to May 12, 1951;
> October 2, 1951, to November 2, 1951.

His work for Maynard Steel was always that of a chipper and grinder. Maynard Steel operated a foundry which was

in a separate building from the cleaning and grinding department in which Gliniecki worked. When the castings reached Gliniecki they were covered with sand which was removed in the cleaning and grinding operation. There were also imperfections in the castings which had to be ground or pounded off. When doing grinding Gliniecki used a grinding wheel which revolved at high speed, while the chipping was done by means of a pneumatic hammer. Much of his work was done on large castings having openings big enough so that he could insert his head and the upper part of his body into them, so as to have his arms free to work inside the casting. This was a particularly dusty operation because his body largely blocked the opening so that the dust could not escape therefrom during the time he was working inside the casting.

From May 28, 1951, to June 13, 1952, Gliniecki worked as a chipper and grinder for Allis Blast. This company did not operate a foundry, but castings were brought in from other companies for cleaning and grinding. A large portion of the castings worked on had considerably less sand on them than those which Gliniecki had worked on at Maynard Steel. Furthermore, it was not necessary for him to insert his body inside of the castings while working on them as was the case at Maynard Steel. He wore a respirator while at Allis Blast, while he wore a respirator only part of the time when employed at Maynard Steel. While working at Allis Blast he was experiencing shortness of breath and there was much absenteeism in his work record. Gliniecki's explanation for such absenteeism was that it was due to ill-health. During the thirteen months' period he was employed by Allis Blast, Gliniecki worked but one thousand seventy-six hours, which, on the basis of forty hours per week, would amount to just under twenty-seven weeks of actual work.

While working at Allis Blast, Gliniecki's shift was from seven to eight hours per day. After working several months

for Allis Blast he attempted to work on a part-time basis of four hours per day for his former employer, Maynard Steel. However, this proved too much for him to attempt, and he gave up such part-time employment with Maynard Steel after a trial of one month from October 2, 1951, to November 2, 1951.

In early June, 1952, Allis Blast sent Gliniecki to the office of Dr. W. C. Hermann, a physician, for a physical examination and an X ray was there taken of his chest under date of June 6, 1952. Such X ray was sent to Dr. O. A. Sander, a physician who specialized in diseases of the chest, in order that Dr. Sander might read such X ray and render a report thereon. From reading such X ray, Dr. Sander concluded that Gliniecki had silicosis and the doctor advised that Gliniecki should no longer work in a dusty occupation. On the basis of Dr. Sander's report, an executive of Allis Blast had a conference with Gliniecki and suggested that because of Dr. Sander's report Gliniecki should stop working and draw unemployment compensation benefits for a while.

Gliniecki followed such advice and drew unemployment compensation benefits for a period of fifteen weeks after which he secured a job with another employer in a nondusty occupation assembling electric motors. In December of 1952, Gliniecki contracted pneumonia and was treated by Dr. Zachary Slomovitz for such pneumonia and pleurisy. Dr. Slomovitz procured the various X rays that had been taken over a period of years of Gliniecki's chest, and, from the reading of such X rays, Dr. Slomovitz concluded that Gliniecki had silicosis of either stage two or stage three which had its inception back in 1947 or 1949.

Dr. Slomovitz, in his testimony, placed particular emphasis upon the fact that an X ray taken January 15, 1949, showed an accentuation of lung markings over X rays taken in 1938 and 1947. In diagnosing Gliniecki's condition as silicosis, Dr. Slomovitz based such conclusion on the symptoms of

shortness of breath and easy susceptibility to fatigue as well as upon the X-ray readings. Dr. Slomovitz concluded that as of April 23, 1954, Gliniecki had sustained 25 per cent permanent disability, and that such degree of disability had begun as of December, 1952. It was Dr. Slomovitz's opinion that such disability would continue and not improve with time.

Dr. O. A. Sander also testified that there had been a marked progression of the silicotic condition in Gliniecki's lungs as shown by the X rays of January 15, 1949, and May 13, 1951, over that disclosed by a prior X ray taken on July 26, 1947, while the X rays taken subsequent to May 13, 1951, had shown very little change in condition. Dr. Sander's diagnosis was that Gliniecki was suffering from moderately advanced nodular silicosis. It was Dr. Sander's further opinion that Gliniecki's exposure to dust at Allis Blast was not "a material contributory factor in the progression of the silicosis." Such conclusion was based by him upon the fact that X rays showed marked progression between 1949 and 1951, while practically no progression was visible in the X rays after May 13, 1951. In a written medical report submitted by Dr. Sander, which was admitted in evidence, he stated that Gliniecki developed "his fairly advanced silicosis" during the time that he was employed by Maynard Steel.

Several other physicians testified in addition to Drs. Slomovitz and Sander. One of these, Dr. G. J. Bergmann, who has had considerable experience reading X rays of men employed in foundries having silicosis, testified that an X ray taken of Gliniecki's chest on July 26, 1947, by the Industrial Clinic with which Dr. Bergmann was associated, showed no presence of silicosis. It was his diagnosis that Gliniecki, as of the time of trial, had "second stage or nodular type of silicosis" due to inhalation of dust while working in foundries.

Gliniecki suffered a marked decrease in earnings as a result of giving up his occupation as a chipper and grinder and seeking employment in nondusty occupations. During the early period of his employment by Allis Blast he had been compensated on a piecework basis and his average earnings were $3.25 to $3.50 per hour, but thereafter had been employed by such employer on an hourly rate basis of $2.40 per hour. His earnings assembling motors, after drawing the unemployment compensation benefits following termination of his employment by Allis Blast, was at the rate of $1.40 per hour. After recovering from his pneumonia and pleurisy he accepted another job with a beginning wage of $1.21 per hour. It is Gliniecki's testimony that his shortness of breath and susceptibility to fatigue prevented him from undertaking other employment that would pay him higher wages.

We have no hesitancy in concluding from the foregoing summary of the facts, which were brought out in the hearings before the examiners of the commission, that there is ample credible evidence to sustain the findings of the commission subjected to attack on this appeal, viz.: (1) That Gliniecki has second or third-stage silicosis as a result of which he sustained permanent partial disability to the extent of 25 per cent; (2) that his employment at Maynard Steel subjected him to heavy dust exposure which produced such silicosis; and (3) that the slight exposure at Allis Blast was not a material contributory factor in the progression of the silicosis.

The commission, therefore, rightly denied the application for compensation benefits against Allis Blast and its insurance carrier.

In the case of *Montello Granite Co. v. Industrial Comm.* (1938), 227 Wis. 170, 278 N. W. 391, the court had before it for construction the last sentence of sec. 102.01 (2), Stats.,

as amended by the legislature in 1933, which sentence reads as follows:

" 'Time of injury,' 'occurrence of injury,' 'date of injury' is the date of the accident which caused the injury, or in the case of disease, the last day of work for *the last employer whose employment caused disability.*" (Italics supplied.)

In construing such sentence of the statute, the court stated (p. 189):

" 'Employment caused disability' means that employment which caused it *or to some appreciable extent furthered its progress.*" (Emphasis supplied.)

It is clear from the opinion expressed by Dr. Sander in his testimony that the slight exposure at Allis Blast did not to any *"appreciable extent"* further the progress of Gliniecki's silicosis, which had had its origin in the latter's employment by Maynard Steel.

Plaintiffs' brief calls attention to the fact that in the case of *Kannenberg Granite Co. v. Industrial Comm.* (1933), 212 Wis. 651, 250 N. W. 821, the last employer was held liable even though the applicant had worked for the employer for only two months with exposure to silica dust; and that in the case of *Nordberg Mfg. Co. v. Industrial Comm.* (1933), 210 Wis. 398, 245 N. W. 680, it was held that a five months' period of employment with exposure to silica dust was sufficient to establish liability. However, in both of those cases there was medical testimony to support the commission's findings that these short periods of exposure had aggravated a pre-existing silicosis. These two cases are not authority for contending that this court has ever laid down any "rule of thumb" that any particular period of exposure to silica dust must be held as a matter of law to have furthered the progress of a pre-existing silicosis to some appreciable extent. Under the limited powers of review

granted by sec. 102.23 (1), Stats., this court possesses no power to lay down such a rule of law.

The length of time of exposure to silica dust is only one of two factors which determine whether the exposure is sufficient to aggravate a pre-existing silicosis to an appreciable extent. The other factor is the amount of silica particles of a particular fineness which were suspended in the air and breathed by the employee while performing his work. It is conceivable that exposure for thirteen months in a certain employment would produce less inhalation of harmful silica dust in the lungs than would two months' exposure in another employment where there was a much greater suspension of silica dust in the air.

The erroneous assertion is made in plaintiffs' brief that the commission found that the 25 per cent permanent partial disability of Gliniecki existed as of November 2, 1951, the last day he worked for Maynard Steel. If resort will be had to such findings it will be seen that the commission did not find such degree of disability existed as of November 2, 1951, but that the same was sustained "following that date." As we read the findings, the exposure which produced the disabling silicosis occurred prior to November 2, 1951, while applicant was in the employ of Maynard Steel, but the actual disability resulting from such exposure did not occur until after that date. There is no necessity that the actual disability should have occurred during the course of employment in order to permit recovery of workmen's compensation benefits. As we recently pointed out in *Green Bay Drop Forge Co. v. Industrial Comm.* (1953), 265 Wis. 38, 48, 60 N. W. (2d) 409, the 1933 amendment to sec. 102.01 (2), Stats., defining "time of injury" and "date of injury" was intended to take care of a situation where the disability from occupational disease occurs after the termination of the employment which produced such disease.

We now turn to the remaining issue raised on this appeal, *i. e.,* that the commission had no power to find 25 per cent permanent partial disability and at the same time retain jurisdiction to award further disability in the future by making its award interlocutory in character.

Counsel for plaintiffs strongly rely on the recent decision made by a divided court in *California Packing Co. v. Industrial Comm.* (1955), 270 Wis. 72, 70 N. W. (2d) 200. We believe counsel has misinterpreted the rationale of the majority holding that the commission in that case had no power to enter an interlocutory order. That case did not hold that the commission could not make an award of permanent partial disability and at the same time enter an interlocutory order. It rather determined that there was no competent evidence in the record to support the finding made that it was uncertain whether applicant might not in the future sustain renewed temporary disability or further permanent disability.

In the instant case Dr. Sander testified that there is greater incidence of tuberculosis in persons afflicted with silicosis than in the general population. We consider it to be a matter of common knowledge that there is much more likelihood of a person having silicosis being subjected to the infection of tuberculosis than normal people not so afflicted. Maynard Steel and its insurance carrier would be liable for such further disability which might result from tuberculosis superimposed upon Gliniecki's existing silicosis. Furthermore, independent of this likelihood of ensuing tuberculosis, Gliniecki testified that his physical condition due to shortness of breath and susceptibility to fatigue was steadily growing worse from the silicosis.

We, therefore, conclude that there was ample credible evidence to sustain the following finding made by the commission in the instant case:

"That a definite determination cannot be made as to whether the applicant will have greater permanent disability or will require medical treatment, and jurisdiction is reserved to make further findings."

Because of the foregoing finding, supported as it is by credible evidence, this is a proper case for the commission to have entered an interlocutory order as authorized by sec. 102.18 (1), Stats.

*By the Court.*—Judgment affirmed.