NORTHWESTERN ASBESTOS & CORK COMPANY and another, Appellants, v. INDUSTRIAL COMMISSION and others, Respondents.*

*October 31—November 26, 1963.*

---

[7] *Davis v. Skille* (1961), 12 Wis. (2d) 482, 490, 107 N. W. (2d) 458.

* Motion for rehearing denied, without costs, on February 4, 1964.

For the appellants there were briefs by *Kivett & Kasdorf*, attorneys, and *Clifford C. Kasdorf* of counsel, all of Milwaukee, and oral argument by *Clifford C. Kasdorf*.

For the respondent Industrial Commission the cause was argued by *Beatrice Lampert,* assistant attorney general, with whom on the brief was *George Thompson,* attorney general.

For the respondents Bartelt Asbestos Company and Hardware Mutual Casualty Company there was a brief and oral argument by *Edward T. O'Neill* of Fond du Lac.

For the respondents Asbestos Products Company and Bituminous Fire & Marine Insurance Company there was a brief by *Schlotthauer, Jenswold, Reed & Studt* of Madison, and oral argument by *John J. Jenswold.*

For the respondent Swetlik there was a brief by *Goldberg, Previant & Uelmen* of Milwaukee, and oral argument by *Albert J. Goldberg.*

DIETERICH, J. The injury for which compensation was awarded is asbestosis, an occupational disease, caused by exposure to, and inhalation of, asbestos dust.

Swetlik began working in the insulation business upon his graduation from high school in 1932. In 1937, he became an applier of insulation and testified that from 1937 to 1955 he worked "almost full time" for Northwestern, except for brief periods when he worked for three other employers. The record reveals that his approximate length of employment by the various parties to the action from 1955 to April, 1961, when he was forced to quit work, was as follows:

1955
    Northwestern—entire year.
1956
    Northwestern—nine months.
1957
    Northwestern—six months.
    Asbestos Products—two months.
    Bartelt Asbestos—four months.
1958
    Bartelt Asbestos—one month.
    Bay Insulation—ten months.

1959
> Northwestern—four months.
> Bay Insulation—five and one-half months.
> Bartelt Asbestos—one month.

1960
> Northwestern—ten months.
> Bay Insulation—two months.

1961
> (January 1 to April 14, 1961)
> Northwestern—two months.
> Bartelt Asbestos—one month.

Swetlik in his testimony stated that he worked with insulation materials of all kinds, including cork, glass, and asbestos and that it was the custom in his business to move from employer to employer, doing the same type of work for each. He was exposed to asbestos dust through the years 1937 to 1961. In 1955, he began noticing shortness of breath while working for Northwestern. In 1956, he noticed a "little cough," although it never bothered him very much. In July, 1956, he went to see his family physician, Dr. Scherping, for treatment of a chest ailment which at that time was diagnosed as pneumonia and was hospitalized for three weeks and missed a total of six weeks' work. After the condition subsided, he returned to work for Northwestern.

Dr. Scherping testified that in August, 1957, a medical checkup revealed that Swetlik was suffering from a pulmonary difficulty which was then diagnosed as bronchitis.

The testimony is that after the checkup Swetlik returned to work. In 1960, while working on a marine job for Northwestern, Swetlik noticed a recurrence of his former symptoms—shortness of breath, coughing, and general weakness —only this time they were much more aggravated than in the past. He returned to Dr. Scherping in April, 1961. X rays were taken at that time and Swetlik was told to quit his job at once. Swetlik worked for one more week after see-

ing Dr. Scherping because he was the only insulator on the project. He has not worked since April 14, 1961.

Dr. Scherping testified that when he first saw Swetlik in 1956, he diagnosed his condition as pneumonia. While Dr. Scherping did not associate Swetlik's bronchial condition with his occupation as an insulator when he saw him in 1956 and 1957, he testified that it was his opinion in retrospect that Swetlik had asbestosis at that time.

Dr. Scherping referred Swetlik to Dr. Helen Dickie, a specialist in pulmonary diseases, in the spring of 1961. Dr. Dickie testified that, upon examination of Swetlik's 1956 X rays and his medical history, she was of the opinion that he was unquestionably suffering from asbestosis as early as 1956. Dr. Dickie also testified that asbestosis is a progressive disease, and once contracted it would not be aggravated in any way by subsequent exposure to asbestos dust. It was Dr. Dickie's opinion that by 1956, Swetlik had a well-established fibrosis of the lung which would have taken several years to evolve.

Dr. Nathan Grossman, a heart and lung specialist who examined Swetlik in 1961, was of the opinion that Swetlik's continuing to work during the years 1956–1961, contributed greatly to the pulmonary asbestosis which caused him to become disabled. However, Dr. Grossman also described asbestosis as a progressive disease which, to his knowledge, is not reversible once it is acquired to any substantial degree, and stated that it is progressively disabling whether or not the exposure to asbestos dust continues.

The findings of the Industrial Commission were that Swetlik sustained an occupational disease; that he had the disease in 1956; that the disease arose out of his employment with Northwestern; that his subsequent employment with the other respondents did not materially affect his disability or disease; and that the date of injury was March 5, 1961, Swetlik's last date of work for Northwestern.

Under sec. 102.23 (1), Stats., findings of fact made by the Industrial Commission acting within its powers are conclusive in the absence of fraud, and it is fundamental that this court will affirm the commission's findings of fact unless such findings are clearly against all the credible testimony, or so inherently unreasonable as not to be entitled to any weight. *Fitz v. Industrial Comm.* (1960), 10 Wis. (2d) 202, 102 N. W. (2d) 93; *Van Valin v. Industrial Comm.* (1962), 15 Wis. (2d) 362, 112 N. W. (2d) 920; *Green Bay Warehouse Operators, Inc., v. Industrial Comm.* (1963), 19 Wis. (2d) 11, 119 N. W. (2d) 435. In reviewing a finding of fact made by the commission, this court's function is to determine whether or not that finding is supported by credible evidence. *Burt Brothers v. Industrial Comm.* (1949), 255 Wis. 488, 39 N. W. (2d) 388; *Borden Co. v. Industrial Comm.* (1958), 2 Wis. (2d) 619, 87 N. W. (2d) 261.

Northwestern argues that there is no credible evidence to establish that the disease arose out of Swetlik's employment with Northwestern. The record discloses that Swetlik worked almost full time for Northwestern from 1937 to 1956, except for brief periods when he worked for three other employers. From 1956 to April, 1961, he worked approximately thirty-one months for Northwestern, seventeen months for Bay Insulation, seven months for Bartelt, and two months for Asbestos Products. He noticed a shortness of breath and a slight cough in 1955. In 1956, he was treated for a lung condition diagnosed at that time as pneumonia, but which Dr. Scherping later testified was undoubtedly asbestosis. He was again hospitalized for bronchial trouble in 1957, and was forced to quit work for good in April, 1961.

Dr. Dickie testified that Swetlik had a well-advanced case of asbestosis in 1956, and that subsequent exposure to asbestos dust after that time would not aggravate the disease. Swetlik never worked for any of the respondent companies

until 1957. Dr. Grossman's testimony as to the effects of subsequent exposure to asbestos fumes contradicted the testimony of Dr. Dickie in that Dr. Grossman gave it as his opinion that Swetlik's continued work after 1956, contributed significantly to the disease. However, it is fundamental that where medical testimony is in conflict, the weight thereof and the credibility of the witnesses is for the commission to determine. *Molinaro v. Industrial Comm.* (1956), 273 Wis. 129, 76 N. W. (2d) 547; *Unruh v. Industrial Comm.* (1959), 8 Wis. (2d) 394, 99 N. W. (2d) 182; *Fitz v. Industrial Comm. supra; Van Valin v. Industrial Comm. supra,* page 367. In any event the conflict is lessened somewhat by Dr. Grossman's statement that asbestosis is progressively disabling whether or not the exposure continues.

Northwestern also argues that there is no credible evidence to establish March 5, 1961, as the "date of injury."

In the instant action, Swetlik's first wage loss occurred in April, 1961, while he was working for Bartelt, whereas his last employment for Northwestern was in March, 1961. The commission found that the "date of injury" was March 5, 1961, the last day Swetlik worked for Northwestern, pursuant to sec. 102.01 (2), Stats., which provides in part:

" 'Time of injury,' 'occurrence of injury,' or 'date of injury' is the date of the accident which caused the injury, or in the case of disease, the last day of work for the last employer whose employment caused disability, . . ."

The above definition of "date of injury" was added to sec. 102.01 (2), Stats., in 1933, and this court commented on the purpose of the statute in *Wagner v. Industrial Comm.* (1956), 273 Wis. 553, 561, 79 N. W. (2d) 264, 80 N. W. (2d) 456, as follows:

". . . the 1933 amendment to sec. 102.01 (2), which defines date of injury with respect to disabling occupational disease, was intended to render compensable any disability

from occupational disease occurring after the employment causing the same had been terminated."

In *Maynard Electric Steel Casting Co. v. Industrial Comm.* (1956), 273 Wis. 38, 48, 76 N. W. (2d) 604, the applicant was suffering from silicosis, and although he had worked for another employer after leaving Maynard, this court in affirming a finding of the commission that Maynard was liable for compensation, stated as follows:

"There is no necessity that the actual disability should have occurred during the course of employment in order to permit recovery of workmen's compensation benefits. As we recently pointed out in *Green Bay Drop Forge Co. v. Industrial Comm.* (1953), 265 Wis. 38, 48, 60 N. W. (2d) 409, the 1933 amendment to sec. 102.01 (2), Stats., defining 'time of injury' and 'date of injury' was intended to take care of a situation where the disability from occupational disease occurs after the termination of the employment which produced such disease."

There being credible evidence to support the commission's finding, the judgment of the trial court is affirmed.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.