CHEQUAMEGON FOREST PRODUCTS, INC., and another, Appellants, v. INDUSTRIAL COMMISSION and another, Respondents.

*May 8—June 2, 1959.*

488

For the appellants there was a brief by *Smith, Okoneski, Puchner & Tinkham,* attorneys, and *John E. Bliss* of counsel, all of Wausau, and oral argument by *Charles F. Smith, Sr.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

BROWN, J.   The occurrence of the accident and some injury resulting in temporary disability is conceded.   The questions upon this appeal are whether there is evidence to support the finding of the commission that total disability extended from December 17, 1954, to June 17, 1955, and whether there is evidence to support the finding that there is a permanent partial disability of seven and one-half per cent due to the accident.

Medical experts testifying for employers often find that the employee's disability is not a result of the accident.

"The determination of the extent or duration of disability of an applicant for workmen's compensation presents

a question of fact and not of law, and the findings are conclusive if supported by credible evidence. [Cases cited.]" *Sheehan v. Industrial Comm.* (1956), 272 Wis. 595, 600, 76 N. W. (2d) 343.

It is not our function to weigh the medical evidence opposed to the commission's finding. We must, however, search the record to see if there is credible evidence upon which the finding may be supported.

Based on evidence accepted by the two examiners and conceded by the appellants, the total disability attributable to the accident extended for four months, that is to about April 14, 1955. Knoll was rehospitalized May 25, 1955, and discharged on June 3, 1955, and Knoll's attending physician, Dr. Gertz, on June 6th, reported to the commission that the injury's healing period had not yet terminated on June 6, 1955.

"The 'healing period' within the meaning of sec. 102.09 (5) (a) and (fm), Stats. 1927, is the period prior to the time when the condition becomes stationary, and requires the postponement of fixing permanent partial disability to a time when it becomes apparent that the injured member will get no better or no worse because of the injury." *Knobbe v. Industrial Comm.* (1932), 208 Wis. 185, 242 N. W. 501. (Syllabus.)

The commission's finding of six months for this temporary total disability extends the healing period only eleven days beyond the time when, by Dr. Gertz's evidence, healing has not been completed. In a hearing on November 3, 1955, Dr. Gertz testified that Knoll was still disabled. The doctor could not say at that time how long the disability would continue. We consider that the experience of the commission in evaluating medical testimony and the evidence of Dr. Gertz sustains a finding that the temporary disability did not come to an end at least before June 17th.

Regarding permanent partial disability, there is evidence that Knoll had an osteoarthritic condition which was not disabling but which had existed for an indefinite time before this accident. In *General A. F. & L. Assur. Corp. v. Industrial Comm.* (1937), 223 Wis. 635, 271 N. W. 385, an employee, affected but not disabled by an osteoarthritic condition, met with an industrial accident and was then disabled. The Industrial Commission awarded 25 per cent permanent total disability, which we affirmed. We said (p. 651):

"After a careful review of the record, we are satisfied that the evidence supports a finding that, while there was a pre-existing osteoarthritis, this condition was not disabling until the trauma resulting from the accident operated to make it so and to create a disability. What this court might do if it were to weigh the evidence is neither certain nor material. The fact that there is evidence to sustain the findings makes it impossible to disturb the award. This court has frequently found that the fact that there was a pre-existing physical condition without which there would not have been serious injury is immaterial. [Cases cited.]"

Dr. Gertz testified that the accident aggravated and accelerated the pre-existing osteoarthritis causing it to become disabling. Dr. Gertz testified :

". . . it is my opinion that the trauma associated with the injury aggravated and accelerated the arthritic process, hastening its pathological changes from a latent and inactive process which produced no symptoms to the patient, into an active and disabling condition manifested by pain and the changes that I elicited and described in my examination."

Further, Dr. Gertz testified:

"It is my opinion that this trauma set off this aggravating process. It might have occurred sometime. I think that eventually this man would have some trouble; but I'm posi-

tive that, in my opinion, it wouldn't have occurred at the time it did and I don't think it would be present today."

There is evidence, then, for the finding that permanent disability to some extent has been caused by the injury. Appellants attack the opinion of Dr. Gertz because he prefaced his opinion by the assumption that Knoll had been able to do his usual work up until the time of his fall. Knoll testified that he was doing a hard day's work every day in the woods before this injury. His work record also shows the same. We find no infirmity in the doctor's assumption and the weight of his opinion was for the commission. Appellants also say that Dr. Gertz did not testify that the permanent disability was due to the injury. They quote an extract from that testimony:

"*Q*. Doctor, at this time, then, if this man is totally disabled as you have described, it is unable to determine, is it not, medically as to whether or not he will have, in the future, any permanent partial disability? *A*. I don't know how much. He is going to have some.
"*Q*. In your opinion he will have some? *A*. Uh-huh."

The surrounding portion of the testimony is devoted, as shown by the record, to the disability due to the accident. That is what the attorneys and the witness were talking about. Appellants submit that this testimony of disability has not been connected with the injury but we do not think this contention is successful. The testimony of Dr. Gertz makes the connection between the permanent disability and the injury, although he does not identify the amount of the permanent disability.

Dr. Burns, who examined Knoll and reported to the commission at the commission's request, found that he could not believe from the X-ray films that the arthritic condition had not disabled Knoll prior to the accident. However, in spite of the X-ray films and Dr. Burns' incredulity, the

record shows that Knoll had not been disabled before the accident.

We may concede that Dr. Burns' report does not state categorically that Knoll's injury causes a disability of seven and one-half per cent. Though Dr. Burns was not convinced that the fall brought on Knoll's present condition, the commission was convinced that some of his disability was due to the accident and there was support for that in the evidence. Dr. Burns' report concludes:

"Although as stated previously, we have no way of knowing that any of his present disability is due to his fall, I would say that he should be given an award roughly comparable to that seen in similar injuries. I would say that he should be given permanent partial disability of somewhere between five and 10 per cent and I don't think anyone will know just exactly where it should be."

Other evidence convinces the commission that the disability is the result of the accident. The commission may reasonably interpret the report as saying "if the cause of disability is established, the amount attributable to that cause is between five and 10 per cent."

The practice of medicine is not an exact science and within limits,—at least within narrow limits,—medical men may testify to estimates, expressed as opinions, which the commission may accept as facts. In its decision the trial court expressed very well the conclusion which we have reached. Judge SACHTJEN wrote:

"In nonscheduled injuries at best there can only be an estimate and experts at times differ widely in making them. Before an expert is qualified to make an estimate he must have training and experience in dealing with similar cases. Dr. Burns, a well-recognized expert in orthopedics, has had such experience and training. He states that his estimate of what should be the award is roughly comparable to that seen in similar injuries. He assigned a very small part of the

total disability attributable to the accident. The court is of the opinion that such an estimate of a medical expert based on his experience with similar injuries is sound. It is based upon medical probabilities rather than on conjecture and guess."

The finding of the commission of a permanent disability of seven and one-half per cent arising from the accident has support in the evidence.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., took no part.