VANDE ZANDE, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Respondents.

*No. 152 (1974). Submitted under sec. (Rule) 251.54 December 1, 1975.—Decided December 19, 1975.*
(Also reported in 236 N. W. 2d 255.)

For the appellant the cause was submitted on the briefs of *James W. Gardner* and *Lawton & Cates,* all of Madison.

For the respondents the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Gordon Samuelsen,* assistant attorney general.

CONNOR T. HANSEN, J. This case presents two issues:

1. Did the department act without or in excess of its powers in finding the applicant permanently partially disabled to the extent of 20 percent of total disability, and making an award based on that finding?

2. Did the department act without or in excess of its powers in failing to award compensation for alleged periods of temporary partial disability?

On July 3, 1969, the applicant, age forty-four, was injured when the brakes of the truck which he was driving in the course of his employment for defendant-respondent, General Asphalt, Inc., failed to operate properly. The truck headed for a lake and just before it went in, applicant jumped out of the cab, sustaining compensable injury. The applicant has a sixth-grade education and had engaged in manual labor most of his life. Certain periods of temporary total disability sustained by the applicant were conceded. These periods were July 3, 1969, to January 1, 1970; July 20, 1971, to August 20, 1971; and November 3, 1972, to November 28, 1972.

The examiner found that the applicant had suffered the following injuries as a result of the accident: Total deafness in his left ear, a skull fracture, loss of sense of taste and smell, facial paralysis and periods of intermit-

tent headaches and dizziness. He also found that the applicant's wage-earning ability had been impaired and he had suffered permanent partial disability to the extent of 20 percent of permanent total disability. The award for this finding of disability was 255 weeks of compensation. He also found that the applicant had suffered temporary total disability during the periods conceded.

A petition for review of the findings and order of the examiner was filed with the department on June 13, 1973. The department entered an interlocutory order modifying the order of the examiner to the extent that the first period of temporary total disability was found to be from July 3, 1969, to July 9, 1970, rather than from July 3, 1969, to January 1, 1970. This lengthened the compensable number of weeks from thirty-three weeks and three days to sixty weeks and three days. The fact that the department entered an interlocutory order is not material to this appeal.

Judicial review of workmen's compensation awards made by the department is governed by sec. 102.23, Stats., which states, in relevant part:

"102.23 **Judicial review.** (1) The findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive. The order or award, . . . shall be subject to review only in the manner and upon the grounds following: . . .

". . .

"(d) . . . the court may confirm or set aside such order or award; and any judgment which may theretofore have been rendered thereon; but the same shall be set aside only upon the following grounds:

"1. That the commission acted without or in excess of its powers.

"2. That the order or award was procured by fraud.

"3. That the findings of fact by the commission do not support the order or award."

*Permanent partial disability.*

The trial court concluded that the hearing loss was a scheduled disability under sec. 102.52 (18), Stats., with

fifty-five weeks of compensation mandated by the legislature as the benefit period for total deafness in one ear, and that the remaining 200 weeks of compensation benefits resulted from computations under the applicable statutory sections for percentages of permanent partial disability. Thus the two benefits were added together to determine the final award of 255 weeks.

The applicant argues that the scheduled benefits allowed by sec. 102.52 (18), Stats., for total deafness in one ear should not be applied to him. Moreover, he contends that the department erred in failing to find him partially disabled to the extent of 40 percent of permanent total disability, in view of the testimony of an examining physician instead of 20 percent as determined by the department.

Sec. 102.52, Stats. 1969, provides, in pertinent part:

"In cases included in the following schedule of permanent partial disabilities indemnity shall be paid for the healing period, and in addition thereto, where the employe is 52 years of age or less, for the period specified, at the rate of 70% of the average weekly earnings of the employe, . . ."

". . .

"(18) Total deafness of one ear from accident or sudden trauma, 55 weeks."

According to the findings of the examiner, as affirmed by the department, the applicant sustained a compensable injury, resulting from the accident, which caused a skull fracture, loss of sense of taste and smell, facial paralysis, intermittent headaches, dizziness, and vertigo, and 100 percent loss of hearing in his left ear. The applicant contends that the ear injury led to the other aspects of disability and, therefore, the entire range of disabilities should be considered as a whole, rather than separating the loss of hearing from the other disabilities. If this procedure were to be followed, based on an estimation of 40 percent permanent partial disability, the applicant would receive an additional period of benefits under sec.

102.44, Stats., instead of the scheduled fifty-five weeks of compensation provided by sec. 102.52 (18), for total loss of hearing in one ear, plus compensation for 20 percent permanent partial disability under sec. 102.44 as determined by the department.

The applicant relies on this court's decision in *Wagner v. Industrial Comm.* (1956), 273 Wis. 553, 79 N. W. 2d 264, 80 N. W. 2d 456, for his contention that the scheduled benefits should not be considered applicable to him. In that case, an employee developed contact dermatitis on his hands as a result of his work as a tool and die-maker in a machine shop. He was forced to quit that occupation because he could no longer use his hands for that type of work. It was contended that the inability of the claimant to use his hands for this type of work should be considered in the same category as loss of a member, and thus compensable under the scheduled rates in sec. 102.52, Stats. This court determined that, because of the permanently sensitized condition of his hands, he was precluded from employment in a machine shop or industrial plant and, therefore:

". . . His disability is greater than that limited to his hands only and actually is one of the same category as extending to the whole body. . . ." *Wagner, supra,* page 566.

On this basis it was concluded that the scheduled rate for loss of a member was inapplicable and that the occupational disease and its effects should be compensated with relation to an overall percentage of permanent partial disability.

The applicant herein argues that his injury, as that suffered by the claimant in *Wagner, supra,* was greater than merely loss of hearing. However, *Wagner* does not support the position of the applicant. This court specifically pointed out that the disability suffered by that claimant, rather than being a scheduled injury, was an

occupational disease, bearing no relation to the schedules of sec. 102.52, Stats. In the instant case, the applicant suffered a loss specifically recognized and compensable under sec. 102.52.

If a loss is sustained which is recognized by and compensable under sec. 102.52, Stats., the schedule therein is exclusive. Sec. 102.44 (4), provides in part, that:

"(4) Where the permanent disability is covered by the provisions of section [s] 102.52, . . . such section [s] shall govern; . . ."

That this language rendered exclusive the statutory schedule for certain specific losses listed in sec. 102.52 was recognized by this court in *Mednicoff v. ILHR Department* (1972), 54 Wis. 2d 7, 14, 194 N. W. 2d 670. In the instant case, the additional physical effects of deafness sustained in one ear have not been ignored by the department. They form the basis for the award of benefits of 20 percent permanent partial disability. The scheduled benefits for total loss of hearing in one ear are applicable and exclusive in this situation.

The second contention made by the applicant involves the validity of the findings made by the department. In reviewing orders of the department, this court has formulated the rule, in accordance with the statutory mandate, that findings of fact are conclusive if supported by credible evidence:

"It is our conclusion the test should be whether there is any credible evidence in the record sufficient to support the finding made by the department. The assumption in that test is, of course, that the evidence is relevant, that it is evidentiary in nature and not a conclusion of law, and that it is not so completely discredited by other evidence that a court could find it incredible as a matter of law. . . ." *R. T. Madden, Inc. v. ILHR Department* (1969), 43 Wis. 2d 528, 547, 169 N. W. 2d 73.

In a situation where the facts are not in dispute, this court has stated:

". . . [W]hen the facts are not in dispute but permit the drawing of different inferences, the drawing of one of such permissible inferences by the department is an act of fact finding and the inference so derived constitutes an ultimate fact upon which a conclusion of law may rest. . . ." *Christnacht v. ILHR Department* (1975), 68 Wis. 2d 445, 451, 228 N. W. 2d 690.

However, if no conflicting inferences could be drawn from undisputed facts, then the determination is a matter of law. *Neese v. State Medical Society* (1967), 36 Wis. 2d 497, 153 N. W. 2d 552. *See also:* Comment, *Judicial Review of Workmen's Compensation Cases*, 1973, Wis. Law Rev. 576.

Certain additional facts are pertinent to this issue. The applicant was treated by two physicians, Dr. Scott and Dr. Peterson, both of whom submitted form reports to the department pursuant to sec. 102.17 (1) (as), Stats. Dr. Peterson testified at the hearing of May 8, 1973, and Dr. Scott's deposition was taken and submitted to the department on the same day. Dr. Peterson examined the applicant following the accident and treated him between that date and September 14, 1970. He examined him again on March 30, 1973. He deferred to the opinion of Dr. Scott on the matter of permanent partial disability relating to the body as a whole resulting from the ear injury, because he was not involved in evaluation and treatment once Dr. Scott was brought into the case.

Dr. Scott treated the applicant for the problems related to the ear injury and performed two surgical procedures. These were described as destructive procedures not intended to make the inner ear function, but rather intended to remedy the situation which caused the applicant to sustain dizzy spells. The temporary total disability periods from July 20, 1971, to August

20, 1971, and from November 3, 1972, to November 28, 1972, represent the healing periods following each of these surgical procedures.

In the report form submitted by Dr. Scott to the department, the applicant's permanent partial disability was estimated at 35 percent. Dr. Scott revised this estimate in his testimony on deposition to 40 percent, because the dizziness had not disappeared, as he originally thought it would. However, Dr. Scott made it very clear that the estimation included the loss of hearing, as well as the related disabilities, and that the hearing loss constituted more than 50 percent of the estimation of permanent partial disability. This is credible evidence supporting the award made by the department. Dr. Scott testified the loss of hearing contributed in excess of 50 percent of his estimation of 40 percent permanent partial disability. The loss was appropriately compensated by the scheduled rate. The remaining disabilities constituted less than half of the estimation, resulting in an award of 20 percent, or half of the total estimation of disability. The decision of the trial court, confirming the findings and order of the department are affirmed on this point.

In *Transamerica Ins. Co. v. ILHR Department* (1972), 54 Wis. 2d 272, 276, 195 N. W. 2d 656, it was stated:

". . . the law in this state is '. . . well settled that the determination of disability, its cause, its extent, or duration, present questions of fact and the industrial commission's findings thereon become conclusive if supported by credible evidence.'"

The applicant contends that the examiner and the department failed to articulate its reasoning in arriving at the final percentage and computation of benefits due. It is undeniable that the department must provide "a clear articulation of the reasons for a particular determination." *Transport Oil, Inc. v. Cummings* (1972), 54

Wis. 2d 256, 265, 195 N. W. 2d 649. The hearing examiner's findings of fact recited the disabilities suffered by the applicant as follows:

". . . that as a result of the injury of July 3, 1969 the applicant has sustained total deafness in his left ear; that as a result of the injury of July 3, 1969 the applicant sustained a skull fracture and the applicant has lost his sense of taste and smell; that the applicant has facial paralysis; that the applicant suffers from intermittent headaches, dizziness, and vertigo; that the applicant has a 6th grade education and has done manual labor for most of his work life; that as a result of the injury of July 3, 1969 the applicant's wage-earning ability has been impaired; . . ."

Then, the examiner found as fact:

". . . that as a result of the injury of July 3, 1969 the applicant sustained 100 percent loss of hearing of his left ear and permanent partial disability to the extent of 20 percent of permanent total disability; that a total of $12,112.50 would be due for 255 weeks of compensation for permanent partial disability; . . ."

The latter were ultimate findings of fact based upon the individual disabilities enumerated in the basic findings; the disabilities were separated by the examiner into two separate categories, loss of hearing, and other effects. The resulting award was computed on that basis. The reason for the award based on the two separate categories received adequate articulation by the examiner. Once separated into two categories, one compensable under sec. 102.52, Stats., and the other compensable under sec. 102.44, an appropriate computation could be made.

*Temporary partial disability.*

The applicant also was awarded benefits by the order of the department for periods of temporary total disability between July 3, 1969, and July 9, 1970; July 20,

1971, to August 20, 1971; and November 3, 1972, to November 28, 1972. The first period encompassed the original recovery time, while the latter two periods resulted from the surgical procedures performed. The applicant contends that such award was not supported by the evidence; rather, he should have been awarded benefits for temporary partial disability from July 9, 1970, to July 20, 1971; and from August 20, 1971, to November 3, 1972. These periods followed those of temporary total disability after the accident and after the first surgical procedure. The department made no findings or award for temporary partial disability and the findings and order of the examiner and the department are silent with respect to the issue. The silence of the department with respect to the issue of temporary partial disability may be construed as a finding that no such disability existed, if there is evidence from which inferences could be drawn justifying the department's silence on the matter. *Gallenberg v. Industrial Comm.* (1955), 269 Wis. 40, 43, 68 N. W. 2d 550; *Brenne v. ILHR Department* (1968), 38 Wis. 2d 84, 97, 156 N. W. 2d 497. The determination of the extent or duration of disability is a question of fact and this court must search the record to locate credible evidence which supports such determination, rather than weighing the medical evidence opposed thereto. *Chequamegon Forest Products v. Industrial Comm.* (1959), 7 Wis. 2d 487, 96 N. W. 2d 706.

On the question of temporary partial disability, there appears to be a conflict in the testimony of two attending physicians, Dr. Peterson and Dr. Scott. Dr. Peterson, in a progress report dated July 28, 1970, indicated that the applicant evidenced no improvement in impairment of taste and hearing, and that he should return to work. He further indicated, however, that the headaches might improve. In a report dated September 15, 1970, the doctor stated that the applicant's status was

"very stable at the present time, however, with neither any further improvement nor addition of new symptoms." These reports were confirmed by Dr. Peterson in testimony given at the hearing of May 8, 1973. He further testified that it was his opinion, as well as that of the applicant, related to him at an examination made on March 30, 1973, that the applicant had the same problems, without change, since July or September of 1970:

"Q. And we can state to a reasonable medical probability, can we not, Doctor, that the healing period was over in July or September of 1970 since there's been no change either for the better or for the worse since that time?

"A. Yes, sir. I felt that in as much as over a period of two and a half years he had noticed no returning function in those symptoms, that none would develop."

The medical report form submitted by Dr. Scott to the department gave the following estimations of temporary partial disability:

"From the end of that six month period (January 3, 1970) until July 20, 1971, when the first destructive [surgical] procedure was performed, it is my opinion that Mr. Vande Zande's disability was 75% of the body as a whole as compared to total disability.

"From the time of recovery from the labyrinth destructive procedure (April 3, 1971) to November 3, 1972, it is my opinion that Mr. Vande Zande's disability was 50% to 60% of the body as a whole as compared to total disability."

On deposition, Dr. Scott confirmed his estimation of temporary partial disability. He also indicated, however, that the only elements of disability which had not stabilized by July of 1970, were the dizziness and headaches, the latter of which was not severe or disabling. The destructive surgical procedures were performed in response to the ear problem and Dr. Scott's testimony indi-

cated that the condition stabilized following the second surgical procedure.

In *Larsen Co. v. Industrial Comm.* (1960), 9 Wis. 2d 386, 392, 393, 101 N. W. 2d 129, this court stated:

"An employee's disability is no longer temporary when the point is reached that there has occurred all of the improvement that is likely to occur as a result of treatment and convalescence. At such point the commission is enabled to make a determination of percentage of permanent disability and award compensation benefits therefor. If the record before the commission indicates that a definite determination cannot then be made that the employee will not sustain a greater percentage of disability in the future, the commission should reserve jurisdiction by making its award interlocutory. *Maynard Electric Steel C. Co. v. Industrial Comm.* (1956), 273 Wis. 38, 76 N. W. (2d) 604. However, there is nothing in sec. 102.43, Stats., which authorizes the commission to continue awarding temporary total disability until such time as it is possible to accurately measure the maximum amount of permanent partial disability that may occur at some future time."

The two surgical procedures performed on the applicant were undertaken in an attempt to alleviate the dizziness resulting from the ear injury. Dr. Peterson's report dated August 15, 1969, indicated that such procedures were unlikely to improve the applicant's condition. It is possible to conclude from the testimony of Dr. Scott that there was a chance that the disabilities might improve following surgery, and, thus "all of the improvement that is likely to occur as a result of treatment and convalescence," *Larsen, supra,* had not taken place until after the second surgical procedure. However, the statements of Dr. Peterson regarding stabilization of the condition implicitly conflict with those of Dr. Scott as to continued improvement. The resolution of this conflict by the failure of the department to award temporary partial disability benefits is a conclusive find-

ing of fact, supported by credible evidence. Moreover, the dizziness and headaches, which Dr. Scott acknowledged were the only conditions which had not stabilized by July of 1970, were found by the department to be elements of the permanent partial disability, for which award was made.

The testimony and reports given by Dr. Peterson regarding the stabilization of the condition of the applicant in July of 1970, are a sufficient basis for the failure or refusal of the department to award benefits for periods of temporary partial disability.

*By the Court.*—Judgment affirmed.