MANITOWOC COUNTY, and another, Plaintiffs-Appellants, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, and another, Defendants-Respondents.

Supreme Court

*No. 76–457. Submitted on briefs January 31, 1979.—*
*Decided March 27, 1979.*
(Also reported in 276 N.W.2d 755.)

432

For the appellants the cause was submitted on the joint brief of *Philip R. Brehm* and *Everson, Whitney,*

*Everson, Brehm & Pfankuch, S.C.,* of Green Bay; and by *Richard E. Garrow,* of Manitowoc, corporation counsel for Manitowoc county.

For the respondent Department of Industry, Labor and Human Relations the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Stephen M. Sobota,* assistant attorney general.

DAY, J. This is an appeal from a judgment of the Dane County Circuit Court, the Honorable Norris Maloney, presiding, entered on December 30, 1976 confirming an order of the Department of Industry, Labor and Human Relations (DILHR) under ch. 102, and benefits under sec. 66.191, Stats., (1973) dated January 30, 1976.

The issues on appeal are:

1. Is there credible evidence to support DILHR's finding that the employer received notice of the claimant's injury?

2. Is there credible evidence to support DILHR's finding that the claimant sustained a twenty-five percent permanent partial disability as a result of his injury?

3. Is there credible evidence to support DILHR's finding that jurisdiction should be reserved to enter such future orders as may be warranted?

4. Is there credible evidence to support DILHR's finding that the claimant is entitled to benefits under sec. 66.191 (1), Stats., (1973)?

We conclude that the answer to all these questions is "yes" and accordingly we affirm the judgment.

On March 15, 1974, Robert Hermann worked as a traffic officer and patrolman for Manitowoc County. Several days before that date, he had experienced some discomfort in his chest and under his doctor's prescription took some antibiotics for a virus infection. While on duty on the 8:00 p.m. to 4:00 a.m. shift on the night

of March 15 to March 16, 1974, he and a fellow officer engaged in a high speed chase of up to sixty miles per hour in heavy traffic of an intoxicated driver. During the chase, it appeared that the vehicle might crowd the squad car off the road, although there was no actual contact between the two automobiles. Upon stopping the other car, Officer Hermann felt too shaken and nervous to write up the traffic ticket. About three or four minutes later, Hermann experienced a sharp pain running from his upper right shoulder across his neck to the left shoulder. Shortly thereafter, he returned to headquarters, completed his work shift, drove home and was taken to the hospital and placed in the coronary intensive care unit. Subsequently, Officer Hermann applied for worker's compensation benefits under ch. 102, Stats. and retirement benefits under sec. 66.191(1), Stats. 1973.

DILHR confirmed the findings of its examiners that Hermann sustained an accidental injury on March 15, 1974, arising out of his employment with the county; that Hermann had told the shift supervisor of the high speed chase in which he was involved, and of his not feeling well; that on the morning of March 16, the traffic chief learned of his heart attack which he reported the following week to the county clerk, and that the county received notice of Hermann's injury. DILHR also found that Hermann sustained a twenty-five percent permanent partial disability, and that as Hermann may require further medical treatment for the condition resulting from his injury, jurisdiction should be reserved to enter such future orders as may be warranted. DILHR also found that Hermann's disability was likely to become permanent as to render necessary his retirement from service with the County Traffic Department, entitling him to benefits under sec. 66.191(1), Stats.

Additional facts will be discussed in the balance of this opinion.

ISSUE #1: IS THERE CREDIBLE EVIDENCE TO SUPPORT DILHR'S FINDING THAT THE EMPLOYER RECEIVED NOTICE OF THE CLAIMANT'S INJURY?

Sec. 102.12, Stats. 1973, provides in pertinent part:

"102.12. **Notice of injury, exception, laches.** No claim for compensation shall be maintained unless, within 30 days after the occurrence of the injury or within 30 days after the employe knew or ought to have known the nature of his disability and its relation to his employment, actual notice was received by the employer or by an officer, manager or designated representative of an employer. If no representative has been designated by posters placed in one or more conspicuous places, then notice received by any superior shall be sufficient. Absence of notice shall not bar recovery if it is found that the employer was not misled thereby."

Whether the employer received actual notice is a question of fact to be determined by DILHR, and its finding that the employer did receive notice is conclusive if it is supported by any credible evidence. See *Milwaukee v. Industrial Comm.*, 21 Wis.2d 129, 136, 124 N.W.2d 112 (1963).

Lieutenant Jack Jackson, Hermann's supervisor, testified at the hearing as follows:

"*Q.* And what did you observe of him when you saw him at 4:00 a.m.?

"*A.* I happened to notice that he was sitting at the desk. He seemed to be quite white in color, he didn't seem to have much color, and he was unusually quiet. And I think, I passed a remark to him; what's wrong with you, and he told me that he didn't feel very well, that he had a lot of gas, and he had some terrific pains across his shoulders, and that this was brought on, he said, shortly after he had a high speed chase that night."

In *Van Domelon v. Industrial Comm.*, 212 Wis. 22, 249 N.W. 60 (1933), the court held that mere knowledge

by the employer that the employee became sick on the job did not constitute actual notice within the meaning of sec. 102.12, Stats. However, in this case, the employee linked his illness to the high speed chase.

In addition, James L. Benishek, Chief of the Manitowoc County Traffic Department, testified as follows:

"Q. Now, when did you first—when were you first notified that Officer Hermann was in the hospital with this heart attack?

"A. The following morning when I came into headquarters.

"Q. The 16th?

"A. On the 16th.

"Q. And, um, did you notify the county clerk's office of this incident?

"A. Not for a matter of a few days. I would say approximately the middle of the following week. By that time I was informed that Officer Hermann would not be able to return to duty for sometime, so I then went over to Mr. Kornely, K-O-R-N-E-L-Y, county clerk and then informed him of this incident and asked him if this report should be filed. He stated, that he did not recall in the past that had been filed under a heart attack condition, so we felt at that time that it was not the proper procedure to file a report."

The finding that the employer did have notice that Hermann had an illness related to his employment is supported by credible evidence in the record.

Sec. 102.12, Stats. provides that absence of notice shall not bar recovery if it is found that the employer was not misled thereby. In the absence of notice, the employer has the burden of showing it has been prejudiced. *Milwaukee v. Industrial Comm., supra,* 21 Wis.2d at 136. There is no evidence that the employer was prejudiced in any way in the case before us.

ISSUE #2: IS THERE CREDIBLE EVIDENCE TO SUPPORT DILHR'S FINDING THAT THE CLAIMANT SUSTAINED A TWENTY-FIVE PERCENT PARTIAL DISABILITY AS A RESULT OF HIS INJURY?

". . .[T]he law in this state is '. . . well settled that the determination of disability, its cause, its extent, or duration, present questions of fact and the [department's] findings thereon become conclusive if supported by credible evidence.' " *Vande Zande v. ILHR Dept.,* 70 Wis.2d 1086, 1095, 236 N.W.2d 255 (1975). "In evaluating medical testimony, the department is the sole judge of the weight and credibility of the witnesses." *Semons Department Store v. ILHR Dept.,* 50 Wis.2d 518, 528, 184 N.W.2d 871 (1971) ; *Swiss Colony, Inc. v. ILHR Dept.,* 72 Wis.2d 46, 59, 240 N.W.2d 128 (1976). ". . . [F]indings of fact [by the department] are not to be based upon mere possibilities, or upon speculation or conjecture." *Franckowiak v. Industrial Comm.,* 12 Wis.2d 85, 90, 106 N.W.2d 51 (1960).

It is undisputed that Hermann had pre-existing arteriosclerosis before the heart attack of March 16, 1974. The medical witnesses also agreed that Hermann suffered a myocardial infarction (heart attack) precipitated by the stress of the high speed chase. ". . . [W]hen [a] heart [attack] is caused by employment or employment-related exertion, it is compensable as an industrial accident . . . whether or not there was pre-existing myocardial degeneration or arteriosclerosis." *Tews Lime & Cement Co. v. ILHR Dept.,* 38 Wis.2d 665, 671, 158 N.W.2d 377 (1968) ; *Theodore Fleisner, Inc. v. ILHR Dept.,* 65 Wis.2d 317, 323, 222 N.W.2d 600 (1974).

The DILHR finding of a twenty-five percent permanent partial disability is challenged by the county and its insurer who contend that the testimony of Dr. John Best as to permanent disability was so speculative that it cannot be used to support the finding. Dr. Best, who is a specialist in internal medicine and Hermann's treating physician, testified when asked about the extent of disability:

"Well I have never been asked this before except in the service so, with which I know is not applicable here. If he were in the Air Force, he would be 100 percent disabled period. At least at the time I served. I suppose now—I think I perceive what you're asking, and it would be maybe 50 percent totally disabled. No, that doesn't make sense to me. Well. . . . If one were to have a scale of occupations from the most sedentary to the most stressful, I think his functional performance or capability would be in the 50 percentile."

Dr. Best related the fifty percent disability to the myocardial infarction which had earlier been linked to Hermann's work activity.

Dr. Henry Gale, a specialist in cardiovascular diseases, who examined Hermann on a referral from Dr. Best, wrote a report in which he stated that the accident had resulted in permanent disability by aggravation of the pre-existing arteriosclerosis.

Dr. Norbert Enzer, a specialist in pathology and laboratory medicine, examined Hermann for the county and testified that Hermann sustained no permanent disability from the myocardial infarction. In his opinion, Hermann's disability related only to the underlying arteriosclerosis. When asked by the examiner to estimate Hermann's disability in the labor market, Dr. Enzer stated:

"I must say that the best person to do that would be a statistician perhaps rather than a physician, and

any figure I would give you is really an unscientifically arrived figure. But I would think it would be a generous estimate to say 20 to 25 percent in answer to the question of which you asked which covers as I have indicated the waterfront."

The county contends that DILHR's finding was a compromise based on speculation which was held impermissible in *Polzin v. Industrial Comm.*, 4 Wis.2d 600, 605, 91 N.W.2d 109 (1958). The county argues that the department could not believe Drs. Best and Gale on the issue of causation, and Dr. Enzer on the extent of disability.

In *Polzin*, the court said that the Industrial Commission was not free to fix disability anywhere between the highest and lowest estimates. Thus, where the extremes were ninety percent disability as against five percent disability, a finding of forty to fifty percent which did not approximate either of the percentages given by medical experts, could not find support in the evidence. The court also stated in that case that a variance from the testimony by five percent did not render the finding speculative, noting ". . . 'permanent disabilities cannot be pin-pointed with mathematical precision.' " *Polzin, supra,* 4 Wis.2d at 605.

This method of determining disability followed by DILHR in this case has been approved by this court. In *Chequamegon Forest Products v. Industrial Comm.*, 7 Wis.2d 487, 96 N.W.2d 706 (1959), the treating physician made the causal connection between an injury and the claimant's permanent disability, but he did not specify the percentage of disability. An independent medical examination was conducted by another doctor who was not convinced that the claimant's fall had caused the disability, but concluded that whatever the cause, the claimant had suffered permanent partial disability of between five and ten percent. This court upheld the

commission's finding of seven and one-half percent permanent partial disability, saying, "The commission may reasonably interpret the report as saying, 'if the cause of disability is established, the amount attributable to that cause is between five and ten percent.'" *Chequamegon Forest Products, supra,* 7 Wis.2d at 493.

The county would distinguish *Chequamegon* on the ground that the independent doctor did not unequivocally deny the causal relationship between the accident and the disability. The issues of causation and extent of disability are not necessarily linked. Two physicians may agree that a patient is indisputably blind, without agreeing on the factors that caused the blindness.

Other courts have agreed that the trier of fact has authority to accept or reject medical testimony in whole or in part. In *Zoller v. Barnard, Porter, Remington and Fowler,* 1 A.D.2d 721, 146 N.Y.S.2d 759 (1955), one physician attributed the claimant's entire disability to cerebral arteriosclerosis and said that none of his disability was due to an industrial accident. Another physician testified that the claimant received a head injury in the industrial accident which either caused his total disability or aggravated the arteriosclerotic changes in his brain. The board found the claimant was permanently partially disabled by the industrial accident and fixed compensation accordingly. The court stated:

"The Board was not required to accept or reject the whole of each medical opinion. It had the right to weigh the conflicting opinions in the light of the record as a whole and to determine that only a portion of claimant's disability was due to the industrial accident. There is substantial evidence to support this determination." *Id.* at 761.

In *Reynolds v. George & Hoyt,* 230 Iowa 1267, 300 N.W. 530, 532 (1941), the court said: "Nor does a finding by the commissioner, which accords with the expert testimony of a witness upon certain propositions require

him to accept as correct the testimony of said expert upon other and different propositions. As to evidence of this and every other category, it is his province and duty to cull the false or erroneous from the true." *Accord, Bradbury v. General Foods Corp.,* 218 A.2d 673 (Me. 1966).

The extent of disability estimates could have been stated with greater precision. But this court has recognized that "the practice of medicine is not an exact science and within limits,—at least within narrow limits, —medical men may testify to estimates, expressed as opinions, which the commission may accept as facts." *Chequamegon Forest Products, supra,* 7 Wis.2d at 493.

All of the doctors agreed that Hermann was capable of performing only sedentary work. Dr. Enzer stated that he would be 100 percent disabled for any heavy manual or stressful labor, and was totally disabled for any kind of work in which there was acute stressful demand, especially if coupled with an element of danger. Dr. Gale reported that Hermann was unable to resume strenuous physical activities particularly those involving production quotas, and that he was unable to lift more than twenty-five pounds.

DILHR's findings as to percentage of disability were not speculative, but were based on the opinions offered by the medical witnesses.

ISSUE #3: IS THERE CREDIBLE EVIDENCE TO SUPPORT DILHR'S FINDING THAT JURISDICTION SHOULD BE RESERVED TO ENTER SUCH FUTURE ORDERS AS MAY BE WARRANTED?

Sec. 102.42 (1), Stats. 1973 provides in pertinent part:

"102.42. **Incidental compensation.** (1) TREATMENT OF EMPLOYE. The obligation to furnish such treatment and

appliances shall continue as required to prevent further deterioration in the condition of the employe or to maintain the existing status of such condition whether or not healing is completed."

DILHR's reservation of jurisdiction will be affirmed if its finding as to the need for future treatment is based on credible evidence. *Thomas v. Industrial Comm.*, 4 Wis.2d 477, 90 N.W.2d 393 (1958); *California Packing Co. v. Industrial Comm.*, 270 Wis. 72, 70 N.W.2d 200 (1955).

Dr. Gale's report stated that Hermann's permanent disability was likely to increase, that he will require progress stress testing at periodic intervals, and that he may require myocardial revascularization surgery in the future. DILHR's finding that jurisdiction should be reserved was supported by credible evidence.

ISSUE #4: IS THERE CREDIBLE EVIDENCE TO SUPPORT DILHR'S FINDING THAT THE CLAIMANT IS ENTITLED TO BENEFITS UNDER SEC. 66.191(1), STATS., (1973)?

Sec. 66.191(1) provides:

"66.191. **Special death and disability benefits for certain public employes subject to Wisconsin Retirement Act.** (1) Whenever a policeman, fireman, county under-sheriff, deputy sheriff, county traffic policeman, conservation warden, state forest ranger, field conservation employe of the department of natural resources who is subject to call for forest fire control or warden duty, member of the state traffic patrol, university of Wisconsin full-time policeman, guard or any other employe whose principal duties are supervision and discipline of inmates at a state penal institution including central state hospital, investigator employed by the division of criminal investigation of the department of justice who

is a participating employe under subch. 1 of ch. 41 shall, while engaged in the performance of duty, be injured or contract a disease due to his occupation, and be found upon examination to be so disabled by a disability which is likely to be permanent, as to render necessary his retirement from any of the aforesaid services, the department of industry, labor and human relations shall order payment to him monthly, under s. 20.865 (1) (d) or 102.21, of a sum equal to one-half his monthly salary in such service at the time that he became so disabled. A disability of such a nature as to require reduction in pay or position or assignment to light duty or to adversely affect promotional opportunities within the service shall be deemed sufficient to permit the employe the option of retirement."

Sec. 66.191 (4), Stats. 1973 provides that awards under this section are reviewable under chapter 102. Formerly, such claims were reviewable under ch. 227. See *Sperbeck v. ILHR Dept.*, 46 Wis.2d 282, 290, 174 N.W.2d 546 (1970). Thus, the "credible evidence" test is the standard to be applied in reviewing the department's findings of fact on this issue. *R. T. Madden, Inc. v. ILHR Dept.*, 43 Wis.2d 528, 547, 169 N.W.2d 73 (1969).

The county disputes the department's finding

"That, while engaged in the performance of his duties for the respondent, the applicant was injured and became so disabled as of June 30, 1974, by a disability likely to become permanent as to render necessary his retirement from his former service with the respondent, within the meaning of section 66.191 (1), Statutes . . ."

The county argues that there is no testimony in the record that Hermann has selected the option of retirement.

It is undisputed that Hermann has followed the recommendation of his doctor and has not returned to work with the traffic department. Instead, he has filed an application for disability benefits under sec. 66.191 (1),

Stats. 1973. These facts support a finding that he has selected the option of retirement.

Moreover, all of the medical witnesses agreed that Hermann could continue working for the county traffic department only if he could be assigned to sedentary, clerical work. The medical consensus was that he should avoid employment involving stressful situations and vigorous physical activity. There was undisputed testimony that Hermann's duties as a county traffic policeman and deputy sheriff were to patrol the highways, assist the sheriff, take family calls, and that his duties required him to be able to engage in vigorous physical activity, such as wrestling, if necessary. James L. Benishek, chief of the Manitowoc County Traffic Department testified that his department was not set up to provide Hermann with light duty.

The statute specifically provides that "a disability of such a nature as to require reduction in pay or position *or assignment to light duty* or to adversely affect promotional opportunities within the service shall be deemed sufficient to permit the employe the option of retirement." (Emphasis supplied.)

DILHR's finding in this respect was supported by credible evidence in the record.

*By the Court.*—Judgment affirmed.