INTERNATIONAL HARVESTER, a foreign corporation, Plaintiff-Appellant,†

v.

The LABOR & INDUSTRY REVIEW COMMISSION and Michael J. Joseph, Defendants-Respondents.

Court of Appeals

*No. 82–2225. Argued October 10, 1983.—*
*Decided November 16, 1983.*
(Also reported in 341 N.W.2d 721.)

For the plaintiff-appellant there were briefs and a supplemental brief and oral argument by *Daniel J. Stangle* of *Otjen & Van Ert, S.C.*, of Milwaukee.

For the defendants-respondents there were briefs and oral argument by *Dennis H. Wicht* of *Gillick, Murphy, Gillick & Wicht,* of Milwaukee, and a supplemental brief and oral argument by *Bronson C. La Follette,* attorney general, and *Lowell E. Nass,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Robert W. Hansen, Reserve Judge.

BROWN, P.J. This is a worker's compensation case. The Labor and Industry Review Commission found that an employee, Michael Joseph, sustained an employment-related mental injury, nontraumatically caused. The employer correctly states the law that such claims may not be allowed, as a matter of policy, unless resulting from "a situation of greater dimensions than the day-to-day emotional strain and tension which all employees

must experience."[1]  The employer argues that this case does not meet that standard.  We hold otherwise and affirm.

The employer, International Harvester, first quarrels with the findings of fact.  The employer realizes that a determination as to the cause of a disability is a question of fact, and departmental findings in regard to causation are conclusive upon this court if supported by substantial evidence.  *Princess House, Inc. v. DILHR,* 111 Wis. 2d 46, 54, 330 N.W.2d 169, 173–74 (1983).  It claims, however, that certain important findings are not supported by any credible evidence, and if these findings are not supported, then no "situation of greater than normal dimensions" has been shown.  We rule the findings are supportable.

The record discloses that on February 25, 1975, Lowe Jones, a co-worker and friend of Joseph's, was splashed with molten metal causing his hair and clothing to catch on fire.  Joseph testified that he observed the man in flames and visited Jones in the hospital.  Jones died on April 6.  After Jones' accident, Joseph occasionally performed the same type of iron-pouring duties that Jones had been performing at the time of the accident.

---

[1] *School District No. 1, Village of Brown Deer v. DILHR,* 62 Wis. 2d 370, 377–78, 215 N.W.2d 373, 377 (1974); the law on this subject has since been codified as sec. 102.01(2)(c), Stats., which reads as follows:

"Injury" means mental or physical harm to an employe caused by accident or disease, and also means damage to or destruction of artificial members, dental appliances, teeth, hearing aids and eyeglasses, but, in the case of hearing aids or eyeglasses, only if such damage or destruction resulted from accident which also caused personal injury entitling the employe to compensation therefor either for disability or treatment. "Injury" includes emotional stress or strain without physical trauma, if it arises from exposure to conditions or circumstances beyond those common to daily life.

Subsequent to the event, Joseph's behavior began to change in that he exhibited prolonged periods of quietness, crying and nightmares. Joseph's last day of work was August 5, 1975, with the exception of an unsuccessful attempt to return from June 1 to June 3, 1976. He has been diagnosed as a marginally functioning paranoid schizophrenic.

The causation findings challenged by the employer reads as follows:

As of February 25, 1975 the applicant was not psychotic. However, the above events, including aiding the co-worker getting the iron pourer job, witnessing the burning event, visiting the charred employee in the hospital, such employee's death and the applicant's returning to work on the iron pourer job caused the applicant's psychotic condition. Such events created applicant's psychotic breakdown.

The employer first challenges the finding that Joseph aided his co-worker in obtaining the iron-pourer job. Notwithstanding the employer's testimony that workers have no input into a co-employee's job assignment, there is still credible evidence to support the finding. Joseph was a union steward. He testified he could have used his influence to deny the deceased the new position. This is because the chosen party was picked from a list of interested employees. Had Joseph sought out and found a person equally or more qualified than the deceased, perhaps the employer would have picked that person instead. The finding is based on evidence in the record that Joseph felt responsible for the deceased.

The employer next claims that Joseph could not have witnessed the burning event from where he was stationed. The employer is splitting hairs. Joseph admitted being in a different area, but he saw the man in flames. That is all that is necessary.

Finally, the employer contends that Joseph did not return to the iron-pourer job as Joseph's iron-pouring work was in a different area of the foundry and on a different machine. This does not contradict the LIRC's finding that Joseph returned to work as an iron pourer. We accept the findings of the Commission.

Even if the findings are accepted as is, the employer claims that compensation for this nontraumatic mental injury is contrary to statutory intent, prior case law and public policy.

That recovery for nontraumatic mental injury in a worker's compensation action can be had, there is no doubt, and the employer admits as much. That was settled in *Swiss Colony, Inc. v. DILHR*,[2] which held that injury includes emotional stress without physical trauma if it arises from exposure to conditions or circumstances beyond those common to everyday life.

The employer, however, contends that witnessing another employee's injury should not be considered an event giving rise to a compensable nontraumatic mental injury as envisioned under *Swiss Colony* and sec. 102.01(2)(c), Stats. It should not be compensable, the employer argues, because witnessing another's injury is a common occurrence of everyday life for employees, especially those in blue-collar jobs. Since it is a common occurrence, although unfortunate, it does not arise from the kind of exposure to conditions or circumstances beyond those common to daily life.

The employer reasons that to allow recovery for mental injury just because an employee witnesses another's hurt would invite malingering and false claims. Plus, there would be no sensible or just stopping point. Laborers might make claims for mental injuries only passively

---

[2] 72 Wis. 2d 46, 240 N.W.2d 128 (1976).

connected to the job, due more to the peculiar psychological makeup of the "bystander" than to anything closely resembling proximate cause. Thus, those preconditioned to the impact of events might react badly to what should be a normal work day occurrence. Since the preconditioned employee is not the fault of the employer, to allow recovery in these situations would be contrary to the policy behind *Swiss Colony*.

The employer's position has arguable merit and has, in fact, been the subject of intense debate in many of this country's jurisdictions. Perhaps the most articulate discussion of the issue can be found in *Wolfe v. Sibley, Lindsay & Curr Co.*, 330 N.E.2d 603 (N.Y. 1975). Because of the importance of the issue involved, we certified this case to the supreme court on August 4, 1983, but it was denied on August 30, 1983. Despite the arguable merit of the employer's position, however, we are not persuaded.

The employer's argument is too broadly based. We agree that *Swiss Colony* requires more evidence than just witnessing injury to another as a cause of subsequent mental illness. Conditions must exist above and beyond the greater dimensions of day-to-day strain. In our view, this means that compensation should be restricted to those who were active participants in the tragedy— those who were so involved with the tragedy that they would feel some responsibility or connection with it.

Joseph did not merely witness the accident. He was intensely involved. The deceased was his friend. He felt he could have prevented his friend from obtaining the fateful job. He felt responsible for his death. He felt an integral part of the tragedy. Thus, under *Swiss Colony*, his mental condition was caused by a series of events beyond the commonplace.

The recognized purpose of the Worker's Compensation Act is that every personal loss to an employee incident

to the performance of the employer's duties is a mutual misfortune charged to the cost of production. *City of Milwaukee v. Miller,* 154 Wis. 652, 670, 144 N.W. 188, 194 (1913). The fundamental idea upon which liability is imposed is that an injury to an employee, like damage to a machine, is a burden that should be borne by industry and ultimately paid by the consumer.

Just as there are machines which have built-in or preconditioned vulnerability to breakdown, so it is with people. Some people may break down when they are active participants in the tragedy, witness it and feel responsible for it; most may not. Whether the employer is blameless for this preconditioned vulnerability is not important. The employer is equally blameless when a machine breaks down. A misfortune of the industry is part of the burden of running a business, whether to a machine or person. The legislature has deemed that this burden be borne by the industry and paid by the consumer. We conclude that where there is proof that a person was an active work-related participant in the tragedy and was not merely a third party witnessing an injury to another and where nontraumatic psychic injury results, compensation is provided for under the Act.

Finally, the employer alleges that Joseph's compensation claim is barred under sec. 102.12, Stats., for failing to show that "the employer knew or should have known, within the 2-year period, that the employe had sustained the injury on which [the] claim is based." The evidence indicates otherwise.

The LIRC found credible evidence to support the employer's knowledge of the injury in a medical statement dated December 1, 1975, which was sent to the employer by Joseph's attending physician. The statement described Joseph's work impairments as a "phobia about

work environment after witnessing a friend being burnt there." This, supported by other medical correspondence between the employer's medical examiner and various physicians, indicates the employer had adequate notice of the injury within the two-year period.

*By the Court.*—Judgment affirmed.