COURT OF APPEALS
DECISION
DATED AND FILED

September 6, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1120**

STATE OF WISCONSIN

Cir. Ct. No. 2020CV1468

IN COURT OF APPEALS
DISTRICT II

TIMOTHY A. WOTNOSKE,

   PLAINTIFF-RESPONDENT,

V.

LABOR AND INDUSTRY REVIEW COMMISSION, WISCONSIN DEPARTMENT OF CORRECTIONS AND WISCONSIN DEPARTMENT OF ADMINISTRATION,

   DEFENDANTS-APPELLANTS.

APPEAL from an order of the circuit court for Dane County: DAVID CONWAY, Judge. *Reversed.*

Before Gundrum P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. The Labor and Industry Review Commission (LIRC) appeals from a circuit court order reversing its decision that Timothy A. Wotnoske did not sustain a mental injury compensable under the Worker's Compensation Act. The issue is whether credible and substantial evidence supports LIRC's finding. We conclude the finding is so supported, and thus we reverse the order of the circuit court.

## BACKGROUND

¶2    Wotnoske filed a worker's compensation claim claiming he suffered a compensable nontraumatic mental injury arising out of his employment with the Wisconsin Department of Corrections (DOC). The following facts are taken from LIRC's findings when reviewing the decision of an Administrative Law Judge (ALJ) who held two evidentiary hearings on the issue.

¶3    Wotnoske began employment with the DOC as a correctional officer beginning in March 2004. He transferred to the New Lisbon Correctional Center, a medium security prison, in October 2004 and to the Oregon Correctional Center in 2009.

¶4    This case involves a number of incidents throughout Wotnoske's time at different DOC institutions. At the hearings before the ALJ, Wotnoske testified to incidents such as working in prisons during two unexpected power outages, working in another when inmates rushed him shortly after a riot, having supervisors accuse him of work rule violations and commence investigations against him, and being sexually harassed by a co-worker. Wotnoske brought in an experienced correctional officer who believed that the incidents he experienced were unusual. Wotnoske also called a medical expert who testified that Wotnoske suffered from

PTSD, major depressive disorder, and panic disorder, and that the above incidents caused his mental injury.

¶5    Another experienced correctional officer testified that the incidents Wotnoske experienced were not unusually stressful, since DOC trained its correctional officers how to respond to power outages and unruly inmates in its institutions. DOC's medical expert diagnosed Wotnoske with explosive personality disorder, PTSD, bipolar depression, and credible suicidal and homicidal ideation. This expert testified that, in his opinion, Wotnoske's employment was not the cause of his behavioral and psychological difficulties, and his underlying personality disorder was longstanding.

¶6    Following the hearings, the ALJ issued a written decision. The ALJ found that Wotnoske suffered a compensable injury as a result of emotional stresses that were of greater dimension than those a correctional officer can typically be expected to experience on the job. The DOC filed a petition for review of the ALJ's decision to LIRC.

¶7    LIRC reversed the ALJ's decision. It found that Wotnoske's mental injury was not compensable. Specifically, LIRC made a finding that states, in part: "The commission finds that the incidents the applicant experienced while employed as a correctional guard for the employer were not of greater dimension than the day-to-day emotional strains and tensions that all correctional guards can be expected to experience in their work." The circuit court reversed.

## DISCUSSION

¶8    On appeal, our scope of review is the same as the circuit court's. *Probst v. LIRC*, 153 Wis. 2d 185, 190, 450 N.W.2d 478, 480 (Ct. App. 1989). We

owe no deference to the circuit court's decision.  *Id.*  We review LIRC's decision, which may be set aside "if [it] depends on any material and controverted finding of fact that is not supported by credible and substantial evidence."  WIS. STAT. § 102.23(6).

¶9      This court reviews LIRC's findings of fact, not those of the ALJ. ***Robles v. Thomas Hribar Truck & Equip., Inc.***, 2020 WI App. 74, ¶9, 394 Wis. 2d 761, 951 N.W.2d 853 (stating that "LIRC, not the ALJ, maintains the ultimate responsibility for fact-finding").  We cannot make our own findings of fact and cannot modify or amend the findings or decision of LIRC.  ***R.T. Madden, Inc. v. DILHR***, 43 Wis. 2d 528, 536, 169 N.W.2d 73 (1969).  "It is not the function of [the] court to determine whether the findings that were not made should have been made or could have been sustained by the evidence."  ***Appleton Elec. Co. v. Minor***, 91 Wis. 2d 825, 829, 284 N.W.2d 99 (1979).  The court affirms LIRC's decision unless it acted without proper authority or exceeded its powers, its decision was procured by fraud, or its findings of fact do not support its order or award.  WIS. STAT. § 102.23(1)(e).

¶10     At the heart of the parties' dispute is not whether LIRC's findings of fact are accurate or supported by credible and substantial evidence; in fact, the briefing does not indicate any dispute as to the accuracy of LIRC's fact-finding. Instead, the dispute between the parties on appeal centers on the applicable standard of review.  Wotnoske argues that LIRC made a conclusion of law in determining that Wotnoske did not experience greater stress than other corrections officers on the job and, thus, the correct standard of review is de novo.  LIRC argues that it is a factual finding as to whether the incidents Wotnoske presented caused his disability and thus LIRC contends that its decision should be upheld as long as it is supported by substantial and credible evidence.

¶11 We agree with LIRC. As we have held, "a determination as to the cause of a disability is a question of fact, and departmental findings in regard to causation are conclusive upon this court if supported by substantial evidence." *International Harvester v. LIRC*, 116 Wis. 2d 298, 300, 341 N.W.2d 721 (Ct. App. 1983) (citing *Princess House, Inc. v. DILHR*, 111 Wis. 2d 46, 54, 330 N.W.2d 169 (1983)). We therefore review as a finding of fact LIRC's determination that Wotnoske did not suffer a nontraumatic mental injury caused by his employment with the DOC that was "of greater dimension than the day-to-day emotional strains and tensions that all correctional guards can be expected to experience in their work."

¶12 Applying this standard, as we now explain, we conclude that substantial and credible evidence from the record supports LIRC's finding. We first observe that the standard for determining whether a mental injury is compensable under the worker's compensation act is arguably more stringent than that for a physical injury. In *School District No. 1 v. DILHR*, 62 Wis. 2d 370, 215 N.W.2d 373 (1974), the Wisconsin Supreme Court considered whether the same elements and level of proof applied to claims of mental injury. Because claims of mental injury resulting from mental stress are inherently difficult to disprove, the court adopted the "unusual stress" test which requires that "mental injury nontraumatically caused must have resulted from a situation of greater dimensions than the day-to-day emotional strain and tension which all employees must experience." *Id.*, 62 Wis. 2d at 377-78. Whether Wotnoske experienced greater stress, strain, and tensions than other similarly situated employees is a finding based on evidence in the record. *See Swiss Colony, Inc. v. DILHR*, 72 Wis. 2d 46, 50-51, 240 N.W.2d 128 (1976) (explaining that its "review of the record shows that

there was ample credible evidence here to support a finding that [the claimant] was exposed to work stresses which were out of the ordinary.").

¶13 As stated above, we will not set aside LIRC's orders as long as they are supported by credible and substantial evidence. *See* WIS. STAT. § 102.23(6); *see also Applied Plastics, Inc. v. LIRC*, 121 Wis. 2d 271, 276, 359 N.W.2d 168 (Ct. App. 1984). "Substantial evidence is evidence that is relevant, credible, probative, and of a quantum upon which a reasonable fact finder could base a conclusion." *Cornwell Pers. Assocs., Ltd. v. LIRC*, 175 Wis. 2d 537, 544, 499 N.W.2d 705 (Ct. App. 1993). Credible evidence is that which excludes speculation or conjecture. *General Cas. Co. v. LIRC*, 165 Wis. 2d 174, 17, 477 N.W.2d 322 (Ct. App. 1991). It is not our role on review to evaluate conflicting evidence to determine which should be accepted; we will affirm if there is credible evidence to support the finding regardless of whether there is evidence to support the opposite conclusion. *Valadzic v. Briggs & Stratton Corp.*, 92 Wis. 2d 583, 592-94, 286 N.W.2d 540 (1979).

¶14 There is no question that Wotnoske and the DOC presented conflicting evidence at the hearing. After considering and weighing all the evidence, the Commission found that Wotnoske had not met his burden of proving that he was subject to situations as a DOC correctional officer that were more stressful than situations a similarly situated DOC employee might experience. Wotnoske disagreed. He argued that he was placed in situations on the job that were extraordinary and unusual for a correctional officer to encounter, including prison power outages and lockdowns.

¶15 On review, we search the record to locate credible evidence which supports LIRC's determination. *See Vande Zande v. DILHR*, 70 Wis. 2d 1086, 1097, 236 N.W.2d 255 (1975). Here, the record contains extensive credible

evidence supporting LIRC's finding that the incidents Wotnoske described, although undoubtedly stressful, were no more stressful than those other correctional officers might be required to face.

¶16     An experienced correctional officer called by DOC opined that Wotnoske was not under any greater stresses than similarly-situated correctional officers.  He testified that there is mental stress on the job caused by dealing with inmates, including being threatened with violence, being verbally assaulted, having to respond to fights, and handling medical emergencies.  However, he further testified that DOC trains correctional officers to deal with these common situations and how to react in emergency situations such as electrical outages.  Even Wotnoske's correctional-officer witness, who opined that Wotnoske was placed in extraordinary situations on the job, acknowledged that an officer should revert to the established DOC policies and procedures upon an unanticipated loss of electrical power.  The record also establishes that in these incidents, Wotnoske and other staff on duty controlled the situations and there were no injuries.

¶17     Our review shows that LIRC considered the full record before it, including competing testimony from the correctional officers, and disagreed with Wotnoske's characterization of these and the other incidents discussed above as being of a greater dimension than normal day-to-day stresses experienced by a correctional officer.  Thus, we conclude that there is substantial and credible evidence to support LIRC's finding that Wotnoske was not under any stresses that were unusual for a DOC correctional officer.  As stated above, it is not properly within the scope of our review to overturn such findings when the record credibly supports them. *See Valadzic*, 92 Wis. 2d at 592-94

¶18     The fact that Wotnoske presented medical evidence from which LIRC could have made different findings is also of no consequence to our review. As with the competing evidence regarding whether the named incidents were unusually stressful, the parties presented competing medical evidence regarding whether the purportedly unusual incidents Wotnoske experienced caused his mental injury. Wotnoske presented medical evidence supporting his claim, and DOC presented contrary medical evidence. It is not our place to weigh the competing medical evidence to reach a different conclusion than LIRC did as long as the evidence LIRC reviewed supports its findings. *See Manitowoc County v. DILHR*, 88 Wis. 2d 430, 276 N.W.2d 755 (1979) (explaining that in evaluating medical testimony, LIRC is the sole judge of the weight and credibility of the witnesses). The medical evidence indeed supports LIRC's conclusion, and we therefore do not supplant its findings with our own.

¶19     We similarly conclude that the record contains substantial and credible evidence to support LIRC's findings that the conduct of Wotnoske's supervisors did not create compensable stresses. Regarding his treatment by supervisors, LIRC stated there was no "serious, persistent pattern of unfair treatment." In his argument to this court, Wotnoske points to our supreme court's language in *School District No. 1* stating that an average man could suffer a compensable nontraumatic mental injury after being berated by an employer for a "significant period of time." *Id.*, 62 Wis. 2d at 378. He argues that LIRC misapplied this standard and therefore its decision should be reversed. Again, we disagree.

¶20     A "persistent pattern" and "significant period of time" are essentially the same standard. LIRC found that any unfair treatment by Wotnoske's supervisors was "isolated and minor in nature, and not so out of the ordinary as to result in

8

serious mental injury." Further, LIRC noted that in most of the specific incidents described by Wotnoske, "there were legitimate reasons for investigations." Wotnoske fails to convince us that LIRC's findings regarding the treatment by his supervisors are unsupported by substantial and credible evidence in the record.

¶21 Finally, we conclude that there is substantial and credible evidence in the record to support LIRC's findings that the alleged sexual harassment of Wotnoske by a co-worker did not place any unusual stress on Wotnoske. Wotnoske was placed on paid leave after retaliating against his alleged harasser by throwing items at him. When Wotnoske returned to work following the leave, he had to work one shift with his alleged harasser. However, the alleged harasser was transferred to a different facility immediately thereafter and Wotnoske had no further issues with the alleged harasser. There also is no evidence that DOC condoned the harassment. We therefore conclude that the record evidence fails to support a claim of persistent harassment or attacks against Wotnoske based on his interactions with his co-worker.

¶22 For the foregoing reasons, we conclude that LIRC's decision is supported by the credible and substantial evidence set forth in the record. We therefore reverse the order of the circuit court and affirm LIRC's decision finding that Wotnoske did not suffer a compensable nontraumatic mental injury.

*By the Court.*—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.